IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| BILLY RYAN, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 5:25-cv-00174-BP |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| **Defendant.** | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Billy Ryan applied for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") under the Social Security Act ("SSA"). The Commissioner denied his application, finding that he was not disabled. Ryan appealed, but the Social Security Appeals Council ("AC") rejected his request for review. At issue is whether substantial evidence supports Administrative Law Judge ("ALJ") Kevin Batik's assessment of Ryan's residual functional capacity ("RFC") and the ALJ's findings concerning jobs that Ryan can perform in the national economy. Finding that substantial evidence does not support these determinations, the Court **REVERSES the** Commissioner's decision and **REMANDS** this case.

I.    **BACKGROUND**

Ryan first applied for DIB and SSI on March 18, 2022, alleging disability beginning December 31, 2017. Soc. Sec. Admin. R. (hereinafter "Tr.") 19. On November 27, 2024, the ALJ denied his application. *Id.* at 19-32. Ryan appealed the decision to the AC, which denied review on July 9, 2025. *Id.* at 5. This marked the final decision of the Commissioner, and the matter became appealable to this Court. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the [AC] makes its decision

denying the claimant's request for review."). On August 20, 2025, Ryan filed this civil action seeking judicial review of the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). ECF No. 1.

## II.    STANDARD OF REVIEW

Titles II and XVI of the SSA govern the DIB and SSI programs, respectively. *See* 42 U.S.C. §§ 401-434, 1381-1383f. Claimants seeking benefits under either program must prove that they are "disabled" within the meaning of the SSA. *See Hollis v. Bowen*, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988) (stating the "relevant law and regulations governing the determination of disability under a claim for [DIB] are identical to those governing the determination under a claim for [SSI]"). A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord id.* § 1382c(a)(3)(A). To determine whether a claimant is disabled and thus entitled to benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a).

First, the claimant must not be presently engaged in any substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* §§ 404.1572, 416.972. Second, the claimant must have a severe impairment or combination of impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpart P, app. 1). Before proceeding to steps four and five, the Commissioner assesses the claimant's RFC and considers his past relevant work ("PRW"). *See id.* §§ 404.1520(a)(4), (e)-(f), 416.920(a)(4), (e)-(f). RFC is "the most [a claimant]

2

can still do despite his limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). Previously, PRW meant work the claimant performed "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). The definition has since changed, and as of June 22, 2024, PRW means the "work that [the claimant has] done within the past five years that was substantial gainful activity and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(2). The Commissioner made his decisions regarding Ryan's application after June 22, 2024, so the new definition is proper in this case. *See* Tr. 29.

Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his PRW considering his RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing []he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis*, 837 F.2d at 1382. "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th

3

Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239

F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).

"A finding of no substantial evidence is appropriate only if no credible evidentiary choices

or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh

evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully

scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417; *Hollis*,

837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to

resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quoting *Selders v. Sullivan*, 914 F.2d

614, 617 (5th Cir. 1990)).

## III.    ANALYSIS

The Commissioner, acting through the ALJ, completed the five-step evaluation process

here. *See* Tr. 19-32. First, the ALJ found that Ryan had not engaged in SGA since December 31,

2017. Tr. 21. Next, at the second step, the ALJ found nine medically severe impairments:

degenerative disc disease of cervical spine, coronary artery disease, obesity, hypertension, diabetes

mellitus, obstructive sleep apnea, brain aneurysm, neurocognitive disorder, and depressive

disorder. *Id.* Third, the ALJ identified no impairment or combination of impairments that qualified

under the federal regulatory list. Tr. 22.

The ALJ then assessed Ryan's RFC:

> After careful consideration of the entire record, I find that the
> claimant has the [RFC] to perform sedentary work as defined in 20
> CFR 404.1567(a) and 416.967(a) with the following additional
> limitations: He can frequently handle, finger, and feel bilaterally. He
> can occasionally climb ramps and stairs; occasionally balance,
> stoop, kneel, and crouch; and can occasionally tolerate exposure to
> dusts, fumes, and pulmonary irritants. He can never climb ladders,
> ropes, or scaffolds or crawl. He can understand, remember, and
> carry out simple out simple tasks and instructions.

Tr. 23.

At the fourth step, the ALJ found that Ryan had no PRW. Tr. 30. Finally, at the fifth step, the ALJ considered the RFC, testimony from a vocational expert ("VE"), and Ryan's age, education, and work experience to conclude that there are jobs that exist in significant numbers in the national economy that Ryan can perform. *Id.* Occupations representative of those the ALJ found Ryan can perform include Document Preparer (DOT 249.587-018/sedentary/svp 2) with approximately 70,000 jobs in the national economy, Addresser (DOT 209.587-010/sedentary/svp 2) with approximately 10,000 jobs in the national economy, and Table Worker (DOT 739.687-182/sedentary/svp 2) with approximately 23,000 jobs in the national economy. Tr. 31. "[C]onsidering [Ryan's] age, education, work experience, and [RFC]," the ALJ concluded that Ryan is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and resultantly found Ryan not disabled under §§ 216(i) and 223(d) of the SSA. *Id.*

Ryan argues for reversal of the ALJ's decision for two reasons. ECF No. 16. First, he contends that the ALJ did not support his RFC determination with substantial evidence because "the ALJ failed to properly articulate the reason for his findings with respect to [Ryan's] severe obstructive sleep apnea, his mild mental limitations in interaction and adaptation, specific evidence from a consultative exam, and [Ryan's] subjective statements." *Id.* at 7. Second, Ryan argues that the ALJ did not support his Step Five determination with substantial evidence because the VE's testimony was unreliable in that it "failed to identify a significant number of jobs in the national economy that [Ryan] could perform." *See id.* at 19.

### A.    The ALJ's RFC finding

#### 1.    Obstructive sleep apnea

Ryan first challenges the degree to which the ALJ considered Ryan's obstructive sleep apnea ("OSA") condition in the ALJ's RFC finding.

At Step Two, the ALJ found OSA to be a medically severe impairment afflicting Ryan. Tr. 21. Later in his opinion, the ALJ explained in pertinent part that "[t]he [RFC] for sedentary work takes into account [Ryan's] allegations of easy fatigability, dizziness, shortness of breath, neuropathy, and any sleep apnea-related daytime fatigue." Tr. 27.

Ryan contends, however, that an RFC limitation to sedentary work cannot accommodate symptoms of OSA-caused fatigue, and that the ALJ "erred by failing to account for Plaintiff's severe OSA with one or more *nonexertional* RFC limitation(s)" such as "limitations regarding the pace of work, time off task, or absenteeism." ECF No. 16 at 10; ECF No. 23 at 4 (emphasis in original). But Ryan cites no authority for this specific proposition, and the Court finds it unpersuasive. *See also Hess v. Kijakazi*, No. 9:21-cv-00111-MAC, 2023 WL 4153208, at *6 (E.D. Tex. Apr. 11, 2023), *rec. accepted sub nom.*, 2023 WL 3775063 (E.D. Tex. June 1, 2023) (upholding an RFC limiting a claimant with sleep apnea to sedentary work without further limitations regarding time off task).

At most, Ryan cites *Milligan v. Colvin*, No. 2:12-cv-101, 2013 WL 5345842, at *5 (N.D. Tex. Sept. 24, 2013), in which the court reversed an ALJ's decision where the ALJ found a severe impairment at Step Two, but decided that that impairment "did not significantly affect plaintiff's RFC at Step Five." *Milligan*, 2013 WL 5345842, at *5.

"To determine whether an ALJ erred in finding severe impairments at step two and not attributing any limitation to those impairments in the RFC assessment, the Court must decide whether the ALJ considered the limitations that were encompassed by the severe impairments or accounted for the limitations in some respect before making a disability finding." *Lisa C. v. Comm'r, Soc. Sec. Admin.*, No. 7:24-cv-00133-BT, 2025 WL 2625582, at *8 (N.D. Tex. Sept. 11, 2025). Here, even were Ryan correct that the ALJ did not specifically attribute any limitation in the RFC to Ryan's OSA—a proposition that the record largely refutes, *see* Tr. 28-29 ("[I]n light

6

of the claimant's testimony regarding fatigue . . . I have further limited the claimant to work at the sedentary exertion level.")—the ALJ clearly accounted for Ryan's OSA in the RFC in more than "some respect." *Lisa C.*, 2025 WL 2625582, at *5.

Here, the ALJ considered the "limited evidence in the record showing ongoing treatment or complaints for [OSA]," observed that Ryan "did not seek additional treatment and did not complaint that his CPAP [machine] was not working," and then explicitly noted that he crafted his RFC to accommodate Ryan's reported OSA symptoms ("fatigue, dizziness, and shortness of breath"), even despite the "generally benign medical records" the ALJ reviewed and the "limited evidence in the record." Tr. 26, 28-29. The circumstances present in *Milligan* are not present here. Unlike in *Milligan*, the ALJ here found an impairment at Step Two, but he did not then contradictorily conclude that the impairment did not affect Ryan's RFC. *See id.* Instead, he made clear that his RFC finding accommodated Ryan's reported OSA symptoms and explained how. Tr. 28-29 (noting that although he found the DDS medical opinions that "claimant was able to perform the full range of light work" to be "generally persuasive," he limited Ryan to sedentary work "in light of [his] testimony regarding fatigue, dizziness, and shortness of breath").

Ryan further challenges the ALJ's conclusion that only "limited evidence in the record" demonstrates ongoing treatment or complaints for OSA, and he deems this conclusion an insufficient "cursory statement." ECF No. 16 at 10 (citing *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010) ("The ALJ does not need to comment on every piece of evidence, but only must build an accurate and logical bridge between the evidence and the final determination.")). "Limited evidence" does not mean the ALJ failed to look at the evidence, and the ALJ confirmed that he considered all of Ryan's symptoms and the extent to which they can reasonably be accepted as consistent with the objective medical evidence, various medical opinions, prior administrative medical findings, and Ryan's hearing testimony. Tr. 23.

Specifically, he noted the limited evidence of Ryan undergoing any medical treatment from 2018 until July 2021, when Ryan was hospitalized for a myocardial infarction. Tr. 25. Then, the ALJ discussed the results of Ryan's follow-up appointments in October 2021 and February 2022, where clinicians found that Ryan had a "normal gait, normal musculoskeletal range of motion, [a] normal diabetic foot exam, [a] normal cardiovascular exam, and [a] normal respiratory exam." *Id.* The ALJ then reviewed the results of Ryan's internal medicine consultive examination in July 2022 with Dr. Dixon in July 2022 that were "unremarkable other than [finding] elevated blood pressure and [an] obese body mass index." Tr. 25-26. The ALJ also discussed Ryan's admission to a hospital for coronary artery disease in January 2023 and a "postoperative course [that] was relatively uneventful" and in which Ryan "voiced no complaints." Tr. 26 The ALJ also reviewed the post-hospital admission progress notes from December 2023 when Ryan "reported being compliant to CPAP [continuous positive airway pressure] [at] night for his [OSA]" and "did not seek additional treatment and did not complain that his CPAP [machine] was not working." Tr. 26. Next, the ALJ considered Ryan's internal medicine consultative examination on January 29, 2024 with Dr. Ruhra that was "essentially benign," as well as Ryan's clinic visit on November 16, 2023, at which time Ryan reported "doing well and that he had been compliant with all his medications." *Id.*

From this evidence, the ALJ concluded that Ryan's "treatment history . . . suggests that the frequency, intensity, and persistence of symptoms were not at a level that would keep hi[m] from performing all work-related activities." *Id.* And he further found, "[i]n viewing the evidence in a light most favorable to the claimant . . . [that] the claimant's impairments would be expected to cause some discomfort and limitation, but consistent with a finding [that] the claimant was able to perform a range of sedentary exertion work." Tr. 27.

Although Ryan challenges the level to which the ALJ considered Ryan's own hearing testimony about his levels of fatigue and other OSA-associated symptoms, this challenge is unavailing.

In evaluating subjective symptoms, the ALJ first determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). Second, the ALJ evaluates the intensity and persistence of an individual's symptoms and determines the extent to which the symptoms limit the claimant's ability to perform work-related activities. *Id.* at *4. In considering the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ examines the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record. *Id.* In this analysis, the ALJ considers daily activities; location, duration, frequency and intensity of pain or other symptoms; precipitating factors; type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment, other than medication, received for relief of pain or other symptoms; any measures used to relieve pain or other symptoms; and other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

The ALJ here performed this two-step process. First, he determined that Ryan's impairments "could reasonably be expected to cause [his] alleged symptoms." Tr. 24. Second, he found that Ryan's testimony concerning the intensity, persistence, and limiting effects of his symptoms were not consistent with the medical evidence and other evidence in the record. *Id.*; *see also* Tr. 30. As discussed above, the ALJ reviewed and explained this evidence at some length. In

short, the ALJ provided specific reasons for the limited weight he assigned Ryan's reported subjected symptoms. Ryan's contention that the ALJ did not explain why he chose not to credit Ryan's hearing testimony, ECF No. 16 at 10, is contradicted by the record. If anything, the ALJ chose *to* credit it, albeit slightly, by "further limit[ing] [Ryan] to work at the sedentary exertional level" despite the "generally benign medical records" the ALJ reviewed. Tr. 29.

The Court finds no reversible error in the consideration of Ryan's OSA in the RFC finding.

### 2. Mild mental limitations and depressive disorder

Ryan next challenges the degree to which the ALJ considered his mild mental limitations and his depressive disorder in the ALJ's RFC finding.

At Step Two, the ALJ found depressive disorder to be a medically severe impairment afflicting Ryan. Tr. 21. At Step Three, the ALJ determined that Ryan has mild limitations in interacting with others and in adapting or managing himself. Tr. 22-23. He also found that Ryan has moderate limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace. *Id.* Then, in his RFC, the ALJ found that Ryan "can understand, remember, and carry out simple . . . tasks and instructions." Tr. 23. This is the only mental limitation in the RFC. *See id.*

Ryan argues that this limitation is insufficient to capture the full range of mental limitations the ALJ found at Step Three, and instead only regards the two moderate limitations, not the two mild ones. ECF No. 16 at 12. He also argues that the RFC completely failed to account for his depressive disorder. *Id.* n. 3.

Although an ALJ must consider the claimant's paragraph B functional limitations when determining the mental RFC, he is not required to incorporate them into his RFC assessment "word-for-word." *Berry v. Astrue*, No. 3:11-cv-02817-L-BH, 2013 WL 524331, at *22 (N.D. Tex. Jan 25, 2013), *rec. accepted*, 2013 WL 540587 (N.D. Tex. Feb. 13, 2013); *see also Danny R. C. v.*

*Berryhill*, No. 3:17-cv-1682-BH, 2018 WL 4409795, at \*15 (N.D. Tex. Sept. 17, 2018) ("Even where an ALJ finds a claimant's mental impairments are non-severe, the ALJ must still consider the impact of [any] non-severe mental impairments—either singly or in combination with other conditions—when he determines [the claimant's] RFC." (alterations in original) (cleaned up)). Importantly, not including particular mental limitations in an RFC is not necessarily legal error— so long as the ALJ considered the limiting effects and restrictions of all the impairments he found. *See Audrey M. D. v. Comm'r of Soc. Sec.*, No. 3:21-cv-02425-B-BT, 2022 WL 18356464, at \*2 (N.D. Tex. Dec. 28, 2022). But not explaining why the ALJ omitted mental limitations from the RFC formulation constitutes reversible error. *See id.*, at \*3 (citing *Martha L. v. Saul*, 1:20-cv-00003-H-BU, 2021 WL 3610316, at \*5 (N.D. Tex. July 27, 2021), *rec. accepted*, 2021 WL 3604082 (N.D. Tex. Aug. 13, 2021)).

In pertinent part, the ALJ limited Ryan's RFC as follows: "He can understand, remember, and carry out simple tasks . . . and instructions." Tr. 23. Ryan argues that "there is no evidence of the ALJ having taken Plaintiff's limitations in interaction and adaptation into account at the RFC level." ECF No. 16 at 12. He makes a similar argument concerning Ryan's depressive disorder. *Id.* n.3. But these contentions are incorrect. First, the ALJ acknowledged Ryan's self-reported "deceased ability to handle stress and changes in routine, and depression," while observing that across a variety of medical records, Ryan's "mental status findings h[ad] been generally unremarkable with findings of being alert and oriented, being cooperative, appropriate affect, normal judgment, normal psychiatric thoughts, intact functional cognition, normal memory, and good concentration." Tr. 27-28 (citing Exhibits 1F/25, 142; 3F/68, 109; 4F/5; 5F/72; 6F/17); *see also* Tr. 29 (discussing the "reconsideration-level DDS psychological consultant['s]" determination that Ryan "can respond appropriately to changes in a routine work setting," and

explaining, however, that due to Ryan's hearing testimony, he would limit Ryan "more appropriately . . . to unskilled work").

Second, the ALJ also specifically discussed the results of Ryan's psychological consultative examination with Dr. Torres-Quevedo on December 14, 2023. Tr. 27-28. The ALJ summarized Dr. Torres-Quevedo's findings as follows: "[Ryan's] ability to maintain effective social interaction on a consistent and independent basis with supervisors, coworkers and the public is impaired due to his cognitive issues." Tr. 30 (citing Exhibit 7F/9). But the ALJ found that this opinion had "limited persuasive value," and he explained why. *Id.* The ALJ found that Dr. Torres-Quevedo "did not define or quantify the term 'impaired,'" and found that the doctor's report "d[id] not identify or describe significant issues in [Ryan's] ability to concentrate or interact with others." *Id.* He also noted that the inconsistencies he perceived between the doctor's findings and the broader record. *Id.*

In sum, the ALJ considered Ryan's mild mental limitations in interaction and adaptation in making his RFC finding. However, he did not explain how he accounted for Ryan's interaction limitation in the RFC. At most, he remarked that while Ryan's "mental status findings have been generally unremarkable with findings of being alert and oriented, being cooperative, appropriate affect, normal judgment, normal psychiatric thoughts, intact functional cognition, normal memory, and good concentration," the ALJ took "into account [Ryan's] allegations of decreased memory, decreased ability to understand and follow instructions, decreased concentration, and decreased ability to handle stress and changes in routine" in the RFC. Tr. 27-28. Missing from this list is any mention of Ryan's capacity for interaction, and it is facially unclear how the RFC's sole mental limitation ("He can understand, remember, and carry out simple tasks . . . and instructions"), or even the RFC's general limitation to sedentary work, can, contrary to the other items in the above list, encompass a mild limitation for interaction. The ALJ does not say. He concludes that "there

is no contraindication within the record that [Ryan's] conditions precluded the performance of work activity at the sedentary exertional level with additional . . . mental limitations," Tr. 28, but he does not explain how those limitations accommodate Ryan's limitation in interaction. *See id.*

Because the ALJ determined that Ryan had a mild limitation at Step Two, he needed to explain how the RFC accounted for such a limitation. *Audrey M. D.*, 2022 WL 18356464, at \*2. Because he did not do so, substantial evidence does not support the ALJ's RFC finding on this point, which is a basis for reversal. *Martha L.*, 2021 WL 3610316, at \*5.

### 3. Other claimed points of error

Additionally, Ryan appears to challenge the ALJ's treatment of Dr. Torres-Quevedo's findings, *see* ECF No. 16 at 15-16; ECF No. 23 at 6, ostensibly because Ryan contends the ALJ "ignored highly significant evidence"—namely the doctor's finding that Ryan's ability to interact with others is impaired, that Ryan scored in the fifth percentile or below in ten different mental categories, and Ryan's IQ score. But the ALJ expressly addressed the former impairment finding, and he discussed why he found it unpersuasive. Tr. 30; *see also* Tr. 29 (discussing Ryan's IQ score and memory deficits found in another psychological consultant's report and noting that these deficiencies led to the RFC limitation of unskilled work).

Moreover, there is no requirement that the ALJ adopt a specific physician's assessment. Instead, he is responsible for weighing all the evidence and determining a claimant's capacity for work. *See Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773 at \*4 (5th Cir. Jan. 18, 2023). ALJs may assign more or less persuasive value to certain evidentiary sources and reach an RFC based on some, but not all, of the evidentiary record. *Vasquez v. Comm'r of Soc. Sec.*, No. 7:21-cv-00028-O-BP, 2022 WL 2975471, at \*5 (N.D. Tex. June 30, 2022), *rec. accepted*, 2022 WL 2972240 (N.D. Tex. July 26, 2022). The ALJ explained why he found Dr. Torres-Quevedo's findings to be unsupportable and inconsistent with the "broader medical records [that] do not document

13

significant social interaction." Tr. 3; *see also* Tr. 27-28 (citing pertinent records); *see also* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). Ryan's challenge to the ALJ's treatment of Dr. Torres-Quevedo's findings on this point is unavailing.

Finally, Ryan also challenges the degree to which the ALJ considered Ryan's subjective symptoms of memory issues. In this instance, the ALJ followed the two-step process for evaluating a claimant's subjective symptoms that the Court set out previously. He first determined that Ryan's impairments "could reasonably be expected to produce some of the alleged symptoms." Tr. 30. Second, he found that Ryan's testimony concerning the intensity, persistence, and limiting effects of his symptoms were not consistent with the medical evidence and other evidence in the record. *Id.* As to Ryan's specific allegations of memory issues, the ALJ provided specific reasons for the limited weight he assigned Ryan's reported symptoms. *See, e.g.*, Tr. 27-28 ("The claimant's other medical providers have not documented substantial memory or other cognitive deficits. Rather, the claimant's mental status findings have been generally unremarkable with findings of being alert and oriented, being cooperative, appropriate affect, normal judgment, normal psychiatric thoughts, intact functional cognition, normal memory, and good concentration." (citing Exhibits 1F/25, 142; 3F/68, 109; 4F/5; 5F/72; 6F/17)).

Ryan's contention that the ALJ's opinion "strongly implies" the ALJ did not credit Ryan's hearing testimony, ECF No. 16 at 17, is inaccurate. *See* Tr. 24 (the ALJ recounting Ryan's hearing testimony); Tr. 28 (citing records regarding Ryan's cognitive tests and memory); Tr. 30 ("The claimant's subjective complaints and limitations are simply not consistent with his largely stable clinical findings, his longitudinal treatment record, or the medical evidence."); Tr. 28 (remarking that the ALJ incorporated Ryan's allegations of decreased memory into the RFC); Tr. 29 (limiting Ryan to unskilled work as a consequence of his inability to perform detailed tasks).

14

The Court finds no reversible error in the consideration of Ryan's subjective symptoms of memory issues in the ALJ's RFC finding.

**B.    The Step Five finding**

Ryan next challenges the ALJ's finding that significant numbers of jobs Ryan can perform exist in the national economy. At Ryan's hearing, the VE testified that an individual with Ryan's age, education, work experience, and RFC would be able to perform the following three occupations: document preparer, addresser, and table worker. *See* Tr. 51-54. The ALJ concluded that the VE was "well qualified and that there [was] a reasonable basis for [her] testimony, . . . [which was] otherwise consistent with the information contained in the [Dictionary of Occupational Titles ("DOT")]." Tr. 31. He therefore found that significant numbers of jobs that Ryan can perform exist in the national economy. *Id.*

Ryan contends that the first two of these occupations are obsolete in the modern economy. *See* ECF No. 16 at 19-23. He also argues that the VE's testimony cannot support the ALJ's finding that work Ryan can perform exists in significant numbers in the national economy in part because the ALJ did not probe whether significant numbers of any position exist in the Lubbock region. *See id.* at 23. The Commissioner argues that the ALJ properly examined whether document preparer and addresser jobs, as they are currently performed, still exist in significant numbers in the national economy. ECF No. 22 at 9. He also argues simply that the ALJ "properly relied on the VE's testimony" that each job exists in significant numbers in the national economy. *Id.* at 8.

On June 22, 2024, the Social Security Administration issued an "Emergency Message" imposing heightened requirements on ALJs considering certain representative occupations "whose continued widespread existence multiple courts have questioned." *See* Emergency Message EM-24027, PolicyNet/Instructions Updates/EM-24027 REV: Guidance Regarding the Citation of Certain Occupations at Step Five of the Sequential Evaluation Process, at https://secure.ssa.gov/

15

apps10/reference.nsf/links/01062025092030AM (last visited May 14, 2026) [hereinafter EM-24027]. "When faced with one of the designated occupations, the ALJ is required to obtain additional evidence that the occupation's requirements, as presently performed, are consistent with the claimant's RFC and that the position still exists in the national economy in numbers that alone, or in combination with other representative occupations, are significant." *Moria R. v. Comm'r of Soc. Sec.*, No. 2:24-cv-00227-Z-BT, 2025 WL 3190852, at *7 (N.D. Tex. Sept. 5, 2025), *rec. accepted*, 2025 WL 2814156 (N.D. Tex. Oct. 3, 2025).

EM-24027 recognizes that both document preparer and addresser are potentially obsolete occupations. *See* EM-24027. As to the document preparer occupation, the VE at Ryan's hearing noted the following:

> "[T]his job no longer involves significant use of microfilming and microfiching. There are not significant numbers of jobs in the national labor market that involve microfilming or microfiche. This job now involves the use of a computer and a scanner to digitize records. This job is commonly found in healthcare, finance, and insurance industries."

Tr. 52-53.

As to the addresser occupation, the VE testified that:

> "[T]his job no longer involves the use of a typewriter or handwriting addresses on envelopes. I'm using this job title to capture the shipping label checkers that I know exist in today's national labor market. So their foundation basis is the Occupational Requirement Survey published by the US Bureau of Labor Statistics. I'll note this job now involves being seated at a bench or a table and reviewing address labels on small parcels or items. . . . This job commonly exists in places such as FedEx, Amazon, and UPS."

Tr. 53.

And although EM-24027 does not list the table worker occupation, the VE nonetheless testified that:

16

> I am using this job title to capture the sedentary, unskilled sorters and assemblers that exist in today's national labor market. Based on my education and experience, further foundation is the Occupational Requirement Survey published by the US Bureau of Labor Statistics. I will note the items sorted and/or assembled have changed dramatically since DOT times. I will note that there are not any—the items assembled are not felt and tiles any longer as defined by the DOT.

Tr. 54.

The VE testified that all three of these occupations were work that Ryan could perform in the national economy. *See* Tr. 51 (ALJ asking VE to consider Ryan's age, education, work experience, and RFC before discussing possible occupations). She also testified that there were respectively 70,000; 10,000; and 23,000 jobs for each occupation in the national economy, even considering how those jobs have changed since the time when the DOT was published. *See* Tr. 52-54. The ALJ inquired whether the VE's testimony had been consistent with the DOT, and noted in his opinion that where the VE's testimony and the DOT diverged, the VE "stated that the testimony on these issues was based on [her] professional education, training, and experience," and the ALJ found the VE "to be well qualified and [that] there [was] a reasonable basis for the testimony on this issue." Tr. 31; *see also* Tr. 55-56 (VE stating the basis of her expert opinions). The Court discerns no basis for error regarding the ALJ's heightened duty pursuant to EM-24027 or otherwise.

Ryan is correct that some courts have found that certain occupations are "obsolete," including some of the occupations that the VE identified in this case. *Aguirre v. Kijakazi*, No. 7:22-cv-169, 2023 WL 6467516, at *25 (S.D. Tex. Sept. 13, 2023) (collecting cases), *rec. accepted*, 2023 WL 6465873 (S.D. Tex. Oct. 4, 2023). But this Court has consistently held that "[w]hether the DOT is outdated is not a determination this Court can make." *Walker v. Berryhill*, No. 7:16-cv-00150-O-BP, 2017 WL 6883894, at *5 (N.D. Tex. Dec. 19, 2017), *rec. accepted*,

17

2018 WL 339307 (N.D. Tex. Jan. 9, 2018); *see also Jarette H. v. Kijakazi*, No. 3:21-CV-01627-M-BT, 2022 WL 3970001, at *3 (N.D. Tex. Aug. 4, 2022), *rec. accepted*, 2022 WL 3995470 (N.D. Tex. Aug. 31, 2022); *William T. v. O'Malley*, No. 6:23-CV-00011-BU, 2024 WL 1357608, at *8 (N.D. Tex. Mar. 29, 2024). Ryan's argument about obsolescence is unavailing, and in any event, the VE considered how the three occupations have changed since the time the DOT was published.

Furthermore, although Ryan objects to the lack of regional specification the ALJ employed in reaching his conclusions regarding the existence of jobs Ryan could perform, "[u]nder 42 U.S.C. § 423(d)(2)(A) and 20 C.F.R. § 404.1566, work exists in significant numbers in the national economy if it exists in significant numbers in *either* the region where the claimant lives or in *other* regions of the country." *Lirley v. Banhart*, 124 F. App'x 283, 283-84 (5th Cir. 2005) (emphasis added). The VE testified to as much. *See* Tr. 52-54 (noting some 103,000 jobs in the national economy). The Court therefore discerns no reversible error in the ALJ's Step Five finding as challenged.

However, because the Court has found that substantial evidence does not support the ALJ's RFC, the hypotheticals the ALJ posed to the VE were defective. Due to this inconsistency, the Court cannot speculate how the VE would have responded if the hypothetical question had included the mental limitation for interaction that the ALJ noted in his decision. *See Singleton v. Colvin*, No. 2:15-cv-0268, 2016 WL 8674675, at *5 (N.D. Tex. Sept. 9, 2016) ("[N]or can this [C]ourt speculate how the ALJ would have ruled if the VE's testimony was based on a non-defective hypothetical."). Therefore, the ALJ's reliance on the VE's testimony casts doubt on whether substantial evidence exists to support the ALJ's finding that Ryan was not disabled, and remand is also appropriate on this basis. *See id.* at *5-6.

## IV.    CONCLUSION

Ryan has shown that substantial evidence did not support the ALJ's RFC determination. Because substantial evidence does not support the ALJ's decision, the Court **REVERSES** the Commissioner's decision and **REMANDS** this case for further proceedings.

It is so **ORDERED** on May 14, 2026.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE